STRAIN–JAPAN R–16 SCHOOL
DISTRICT, Plaintiff/Appellant,

v.

LANDMARK SYSTEMS, INC.,
Defendant/Respondent.

No. 71903.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 10, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 20, 1998.

Application for Transfer Denied
May 26, 1998.

Kenneth Aubrey Slavens, St. Louis, for plaintiff/appellant.

Richard A. Stockenberg, St. Louis, for defendant/respondent.

CHARLES B. BLACKMAR, Senior Judge.

The appellant school district sued for an injunction against arbitration proceedings sought by the defendant contractor, asserting that the contractor had violated section 327.461 RSMo.1994 by entering into a contract to render professional engineering services without being registered as an architect or professional engineer. The trial court dissolved a temporary restraining order and entered judgment for the defendant. The district appeals. We affirm.

The contractor has filed a motion to dismiss the appeal, arguing that the judgment denying an injunction against the arbitration is not final and appealable. This motion was taken with the case. The petition sought no relief other than an injunction and there was no counterclaim. The contractor had not sued to compel arbitration. The trial court denied the school district the only relief it sought. No issues presented by the pleadings remain undecided. The trial court's judgment has all indicia of finality. We overrule the motion to dismiss.

The school district invited bids for additions to its building complex, accompanying its invitation with a floor plan, an elevation drawing, and a five-page notice to bidders which included design requirements for a pre-engineered building. These documents were not sufficient as working documents, and were not signed or sealed by a licensed architect or professional engineer. The defendant contractor had no part in their preparation.

The defendant is a Missouri corporation engaged in the general contracting business. It is not licensed as an architect or profes-

sional engineer. It tendered a lump sum bid which was accepted. The parties proceeded to negotiate a contract, making use of AIA [American Institute of Architects] form A101, 1987 edition at the request of the district. In the space labeled "architect" the contract read: "Plans by General Contractor." "The work" included "a pre-engineered metal shell ... to be erected as shown in the drawings." The contractor was required to use a Nucor Building System product and to "provide signed & sealed construction documents for building permit and School District approval." The contract included a specific requirement reading as follows:

> Preliminary drawings are provided. The successful bidder will need to develop final plans and working drawings, have them sealed by an engineer registered in the State of Missouri, and submit them to the District for final approval. A single source manufacturer is required for framework, roofing, siding and other major structural components.

> ...

> Support concrete (footing pads, piers, foundation) to be designed by an engineer registered in the State of Missouri according to loads and design criteria placed on them by the pre-engineered building.

The plans for the pre-engineered building were supplied to the contractor by Nucor, which also performed the construction work as a subcontractor of the defendant contractor. The foundation plan was furnished by Washington Engineering. Both of these entities were retained and compensated by the defendant contractor. Neither had a contract with the school district. The contractor figured the cost of their services into its lump-sum bid. All pages of the building and foundation plans were signed and sealed by professional engineers registered in Missouri who were not employees of the contractor. All plans were submitted to the district for approval, which was forthcoming.

Section 327.461 provides in pertinent part as follows:

> Every contract for architectural or engineering ... services entered into by any person who is not a registered or authorized architect or registered or authorized professional engineer ... shall be unenforceable by the unregistered or unauthorized architect or professional engineer....

Section 327.401(2) permits corporations whose articles permit to be registered as architects or professional engineers. Such corporations must receive a certificate of authority for each profession named in the articles of incorporation for which they desire registration. There is no indication that the contractor ever sought such registration.

The school district argues that the contract now in litigation is a contact for architectural or engineering services, inasmuch as it requires the contractor to provide these services. It would equate the word "renders" as used in section 327.181 with "provides." It points out that the contract contains no express requirement that the contractor retain an independent subcontractor who is licensed as a professional engineer and could literally comply with the contract requirements if the plans were signed by a registered professional engineer who was its employee. It argues that the contractor expressly agreed to "provide" engineering services by some means, and that in doing so it violated section 327.461, thereby precluding recovery. When we consider that the school district invited the contractor and others to bid, entered into a contract with the contractor making use of the form it designated, specified the subcontractor to be used for the pre-engineered building, and approved plans signed and sealed by registered professional engineers, the argument is hardly one which would commend itself to a court of equity. We prefer, however, not to decide the case on the basis of "clean hands" or any other purely equitable defense, and have no hesitation in holding that there is no statutory violation, and no illegality, in the arrangement these parties entered into.

The district cites *Haith and Company, Inc. v. Ellers, Oakley, Chester and Rike, Inc.*, 778 S.W.2d 417 (Mo.App.1989), which is not at all on point. There a Tennessee corporation whose business consisted of furnishing

professional engineering services entered into a contract to provide plans for a building in Missouri. *Id.* at 418. The corporation at the time was not registered as a professional engineering corporation in Missouri, but the plans were signed and sealed by two of its managerial employees, both of whom were so registered. *Id.* The court found a violation of section 327.461 because the corporation, rather than the individuals, had entered into the contract to provide these services, and held that it could not save its recovery by providing plans signed and sealed by employees. *Id.* at 422. The case differs from this one in that the claimant was not a contractor, but solely a provider of professional engineering services. The case turns on the principle of corporation law that a corporation is a legal entity separate and apart from its shareholders and employees.

The district also cites *Hospital Development Corporation v. Park Lane Land Company,* 813 S.W.2d 904 (Mo.App.1991), which is similarly unhelpful. There a corporation sought to recover for architectural services which were provided through a "sister" corporation with the same shareholders. *Id.* at 905. The claimant apparently was engaged in the contracting business but the action involved solely architectural services. *Id.* The claimant corporation was not registered as an architect in Missouri but the sister corporation was. *Id.* The building was never built with the furnished plans. *Id.* at 906. The court considered *Haith* to be controlling, holding that the claimant could not recover for the services because it, rather than its sister corporation, was the entity which contracted to provide these services. *Id.* at 908. *Hospital Development* was followed in *Kansas City Community Center v. Heritage Industries, Inc.,* 972 F.2d 185, 186 (8th Cir. 1992), in which a corporation which was not registered as an architect or professional engineer entered into a contract for the "design and construction" of a building. The owner sought to void the contract before construction had started because of the absence of registration. *Id.* at 187. The court, applying Missouri law by following *Haith & Co.,* held that there could be no recovery of damages, and no basis for quantum meruit because no services of value had been rendered. *Id.* at

188–89. There is no indication that the contract required plans to be signed and sealed by an architect or professional engineer registered in Missouri.

We view these authorities with respect, but they are not binding on us. Inasmuch as they are not factually applicable there is no reason to discuss them further. We have no occasion either to agree or to disagree with the holdings.

More on point is a decision of our Supreme Court, *Honig Construction Co. v. Szombathy,* 345 S.W.2d 111 (Mo.1961). There a contractor entered into a cost-plus contract, apparently oral, for the construction of a building. *Id.* at 113. The contractor undertook to provide the plans, which were signed and sealed by a registered architect. *Id.* The architect's charges were passed on by the contractor to the owner, with an increment. *Id.* at 117. The Court found no evidence that the contractor had undertaken to perform any architectural services and rejected the claim of illegality. *Id.* at 117–18.

The district seeks to distinguish *Honig* because of statutory amendments which were in effect when *Honig* was decided but not at the time of the transactions there brought into litigation. Section 327.260 RSMo.1949, which governed the transaction, provided simply that "[a]ny contract entered into for any work in this state contrary to the provisions of this chapter shall be null and void." The district also points out that the present law permits the registration of corporations as architects and professional engineers, so that the contractor could have corrected the alleged illegality by so registering. We do not believe that these distinctions are significant. Nor is it of any importance that the contract in *Honig* was a cost-plus contract. Even though the contractor passed the architect's charges on to the owner, there was no contract between the architect and the owner. The case remains authoritative. The trial judge cited cases from other jurisdictions which are entirely consistent with *Honig.* Because *Honig* is so clearly on point we see no need to discuss these cases.

If the school district's position were sound it would be necessary either that owners

contract directly with architects and professional engineers, or that all corporations engaged in the general contracting business qualify for registration as architects or engineers. We believe that if the legislature had indicated that these were the only viable alternatives, it would have said so explicitly.

The purpose of Chapter 327 is to make sure that buildings are soundly and safely designed. We sense no purpose of giving registered architects and engineers a monopoly on the construction business. The contractor acted within the requirements of the law when it used the owner's drawings to bid, entered into a fixed-sum contract with the owner, subcontracted with registered professional engineers for all services requiring their professional skills, and then presented signed and sealed plans for the owner's approval. The professional engineering services were rendered to the contractor. The district contracted not for these services, but for a building conforming to its preliminary sketches. The contractor needed the engineered plans in order to perform its contract. The owner may retain its own architect or engineer, but is not required to do so. The engineering profession is a learned one, but it lacks the personal relationship which is characteristic of the medical and legal professions. The focus is on the application of physical principles.

The district argues that it would have problems recovering damages from the engineers if the plans were faulty, because of lack of privity. Professional duties, as a rule, are imposed by law and are not strictly dependent on contract. See *Donahue v. Shughart, Thomson & Kilroy*, 900 S.W.2d 624, 626–28 (Mo. banc 1995). The contractor is also obliged to provide a sound building constructed in a workmanlike manner and suitable for its intended purpose. See, e.g., *Halamicek Bros., Inc. v. R & E Asphalt Service, Inc.*, 737 S.W.2d 193, 196 (Mo.App.1987). A contractor cannot escape contract liability by arguing that the fault was that of a subcontractor. We are confident that the district is adequately protected if it does not get what it bargained for.

The motion to dismiss the appeal, taken with the case, is overruled. The judgment is affirmed.

CRAHAN, C.J., and JAMES R. DOWD, J., concur.